UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at FRANKFORT

CIVIL ACTION NO. 3:07-CV-26-KKC

IN RE:

MICHAEL J. RAGLE and
TAMMY J. RAGLE                                                                                      DEBTORS

_____

RICHARD F. CLIPPARD,
United States Trustee                                                                             APPELLANT,

v.                                        **OPINION AND ORDER**

MICHAEL J. RAGLE and
TAMMY J. RAGLE,                                                                              APPELLEES.

**** **** **** ****

At issue in this action is whether the United States Bankruptcy Court for the Eastern District of Kentucky erred in determining that, under the bankruptcy "means test," a debtor may deduct from his monthly income "Ownership Costs," for a car he owns free and clear of any debt.

The matter is now before the Court on the Motion for Rehearing (Rec. No. 10) filed by the United States Trustee. In his motion, the Trustee asks the Court to reconsider its Opinion and Order (Rec. No. 9) in which this Court dismissed the Trustee's appeal of the Bankruptcy Court order for lack of jurisdiction.

For the following reasons, the Court will **GRANT** the motion for rehearing and will **AFFIRM** the Bankruptcy Court.

I.      FACTS.

A.      The Means Test for Abusive Bankruptcies.

The Bankruptcy Code (the "Code") authorizes bankruptcy courts to dismiss a Chapter 7

bankruptcy case upon a finding of abuse.  Section 707(b) of the Code, as amended by the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No.

109-8, 119 Stat. 23 (Apr. 20, 2005), provides, in pertinent part, the following:

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by
> the United States trustee, trustee (or bankruptcy administrator, if any), or any party
> in interest, may dismiss a case filed by an individual debtor under this chapter
> whose debts are primarily consumer debts, or, with the debtor's consent, convert
> such a case to a case under chapter 11 or 13 of this title, if it finds that the granting
> of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1).

Section 707 also provides that the court must presume abuse exists if the debtor's

disposable income exceeds a specified amount.  The debtor's disposable income is determined by

his current monthly income reduced by certain allowed expenses. 11 U.S.C. § 707(b)(2)(A)(I).

The provision containing the formula for making this determination is commonly referred to as

the "means test"  and it was added to the Bankruptcy Code by BAPCPA.  If, under the means

test, a presumption of abuse applies to a debtor's bankruptcy petition, the debtor may rebut that

presumption by demonstrating "special circumstances" under 11 U.S.C. § 707(b)(2)(B).

However, even where there is no presumption of abuse or where the presumption is rebutted, the

court may still dismiss a case where the debtor's petition was filed in bad faith or the "totality of

the circumstances" of the debtor's financial situation demonstrates abuse.  11 U.S.C. § 707(b)(3).

*See In Re Zaporski*, 366 B.R. 758, 762-63 (Bankr. E.D. Mich. 2007).

2

**B.     The Deduction for Monthly Expenses under the National and Local Standards.**

Specifically at issue in this case is the provision permitting debtors to deduct from their current monthly income:

> the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides.

11 U.S.C. § 707(b)(2)(A)(ii)(I).

The National and Local Standards referenced in the statute are issued by the IRS as part of its Collection Financial Standards and are set forth in a series of tables that are only available on the Internet. The directions for accessing the tables are found in the Financial Analysis Handbook which is contained in the IRS's Internal Revenue Manual (the "IRM"). The IRM can be found on the IRS's website at  www.irs.gov/irm.  The Financial Analysis Handbook is found at part 5.15.1 of the IRM.  The directions for accessing the Local and National Standards tables are contained in Exhibit 5.15.1-2 of the Financial Analysis Handbook.

On the web page where the tables are located, www.irs.gov/individuals/article/0,,id=96543,00.html, the IRS explains that the Collection Financial Standards are used by the IRS to help determine a taxpayer's ability to pay a delinquent tax liability.  The page contains the following disclaimer:

> IRS Collection Financial Standards are intended for use in calculating repayment of delinquent taxes. . . Expense information for use in bankruptcy calculations can be found on the website for the U. S. Trustee Program.

The IRS web page contains a link to the website for the U.S. Trustee Program,

3

www.usdoj.gov/ust/.   From the U.S. Trustee Program website, a debtor can access the data

required for making the calculations required under the means test including the Local and

National Standards in effect at the time the debtors filed their bankruptcy action.  The National

Standards are a series of tables which contains the following categories of expenses:  food,

housekeeping supplies, apparel and services, personal care products and services, and

miscellaneous. The applicable table depends upon the number of persons in the debtors' home.

The applicable expense amount depends upon the debtors' gross monthly income.

As to the Local Standards, the U.S. Trustee Program website explains that these standards

published by the IRS consist of two primary expense categories: "Housing and Utilities" and

"Transportation." The website further explains that the Transportation Standards consist of two

components: the "Operating Costs & Public Transportation Costs" component and the

"Ownership Costs" component.  At issue here is the Ownership Costs component.  On the web

page, the U.S. Trustee Program explains that the Ownership Costs are "published on a national

basis, by number of cars."

The Ownership Costs table  consists of two columns – titled "First Car" and "Second

Car" – and one row titled "National." The Ownership Costs table applicable to debtors who filed

a bankruptcy action at the time that the Debtors filed their action provided an ownership cost of

$471 for the first car and $332 for the second car.

The "Other Necessary Expenses" referenced by the statute are other expenses allowed by

the IRS "if they meet the necessary expense test – they must provide for the health and welfare of

the taxpayer and/or his or her family or they must be for the production of income."  Financial

Analysis Handbook, § 5.15.1.10. The Financial Analysis Handbook lists specific categories of "other expenses" and describes when those expenses are considered necessary.   Financial Analysis Handbook, § 5.15.1.10 at ¶ 3.   "The IRS does not promulgate caps for Other Necessary Expenses, but allows the actual expenses incurred for those categories."  *Wieland v. Thomas*, 382 B.R. 793, 798  (D.Kan. 2008).

On its web page containing the Collection Financial Standards, the IRS explains that "[t]axpayers are allowed the total National Standards amount for their family size, without questioning the amount actually spent."  As to the Local Standards, however, the IRS explains that "[i]n most cases, the taxpayer is allowed the amount actually spent, or the local standard, whichever is less." The IRS also explains that the Local Standards for Ownership Costs consist of "nationwide figures for monthly loan or lease payments."

In the Opinion under review, the Bankruptcy Court determined that  the Debtors could deduct from their current monthly income Ownership Costs for their 1987 Honda Accord even though the Debtors owned the car free and clear of any debt.  *In re Ragle*, 2007 WL 1119632, at *4-5 (Bankr. E.D.Ky. March 23, 2007).  There was no dispute before the Bankruptcy Court, and there is no dispute here that, with this deduction, the presumption of abuse does not arise with regards to the Debtors' bankruptcy petition.  Thus, the Bankruptcy Court denied the Trustee's motion to dismiss which argued only that the petition should be dismissed as abusive under 11 U.S.C. § 707(b)(1).

On appeal, the Trustee argues that the Debtors should not be permitted to deduct

Ownership Costs for the Honda because they had no such costs since the car was not subject to a loan or lease payment. The Debtors, on the other hand, argue that a debtor may take the deduction even where he owns his vehicle free and clear of any debt.

This is an issue that has been heavily litigated since the enactment of BAPCPA with a close split among the courts that have addressed it. *See In re Sawicki*, 2008 WL 410229, at *2 (Bankr. D. Ariz. Feb. 12, 2008); *In re Canales*, 377 B.R. 658, 662 (Bankr. C.D. Cal. 2007) (citing cases). *See also In re Brown*, 376 B.R. 601, 604-05 (Bankr. S.D. Tex. 2007) (stating "[t]he case law is so evenly divided that neither position can fairly be characterized as the majority").

In this judicial circuit, the courts that have addressed this issue have sided with the debtor, allowing him to take the deduction even where he owes no debt on his vehicle. *See In re May*, 390 B.R. 338 (S.D. Ohio 2008); *In re Smith*, 2007 WL 1836874, at *6 (Bankr. N. D. Ohio, June 22, 2007); *In re Zaporski*, 366 B.R. 758, 766 (Bankr. E.D. Mich. 2007); *In re Billie*, 367 B.R. 586, 592 (Bankr. N. D. Ohio 2007); *In re Crews*, 2007 WL 626041, at *3 (Bankr. N.D. Ohio, Feb. 23, 2007); *In re Zak*, 361 B.R. 481, 488 (Bankr. N. D. Ohio 2007); *In re McIvor*, 2006 WL 3949172, at *4 (Bankr. E.D. Mich. Nov. 15, 2006). The Bankruptcy Appellate Panel of the Sixth Circuit has also ruled that the debtor may take the deduction even where he has no debt or lease payment. *Hildebrand v. Kimbro (In re Kimbro)*, 389 B.R. 518, 521 (B.A.P. 6th Cir., June 12, 2008)(noting that "[a]t least twenty eight published decisions have addressed the issue and there is a close split of authority on the question").

The Bankruptcy Appellate Panels for both the Eighth and Ninth Circuits, however, came to the opposite conclusion, finding that the debtor should not be permitted to take the Ownership Costs deduction unless he owes a debt or lease payment. *See Ransom v. MBNA Am. Bank, N.A. (In re Ransom)*, 380 B.R. 799 (B.A.P. 9th Cir.2007); *Babin v. Wilson (In re Wilson)*, 383 B.R. 729 (B.A.P. 8th Cir.2008)*.* With the exception of the Sixth Circuit BAP, other appellate level courts have also denied the deduction to debtors who own their vehicles outright. *See Wieland v. Thomas*, 382 B.R. 793 (D.Kan. 2008); *In re Meade*, 384 B.R. 132 (W.D. Tex. 2008); *In re Deadmond*, 2008 WL 191165 (D. Mont. 2008); *Fokkena v. Hartwick*, 373 B.R. 645 (D. Minn. 2007); *Neary v. Ross-Tousey (In re Ross-Tousey)*, 368 B.R. 762 (E.D. Wisc. 2007).

### C.     The Court's Dismissal of the Trustee's Appeal.

This Court dismissed the Trustee's appeal for lack of jurisdiction. Parties in a bankruptcy action may appeal a final order as a matter of right but may only appeal interlocutory orders with the leave of the court.  28 U.S.C. § 158(a)(1), (3). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the courts to do but execute the judgment." *In re the V Companies*, 292 B.R. 290, 292 (6th Cir. BAP 2003) (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798(1989)). In the bankruptcy context, the finality determination is more pragmatic and less technical. *In re Dow Corning*, 86 F.3d 482, 488 (6th Cir. 1996).  A bankruptcy court order is final when it "finally disposes of discrete disputes within the larger case." *Id.* (citing *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)).

This Court determined that the Trustee could not appeal as a matter of right because the

7

denial of a motion to dismiss a bankruptcy petition is not a final order. *See In re the V companies*, 292 B.R. at 292 (citing *Archie v. Lanier*, 95 F.3d 438, 442 (6th Cir. 1996); *Kelly, Howe & Scott v. Giguere (In re Giguere)*, 188 B.R. 486, 488 (D.R.I. 1995)(denial of motion to dismiss bankruptcy action is not final order)); *In re Jackson*, 190 B.R. 808, 810 (W.D.Va. 1995)(same)). The Court also denied the Trustee leave to appeal, applying the standards provided in 28 U.S.C. § 1292(b). The Court determined that the issue presented on appeal – whether, under the means test, a debtor may deduct Ownership Costs from his current monthly income for a car that he owns free and clear of any debt – was not a "controlling" issue of law because it would not materially affect the outcome of the case. The Court also found that resolution of this issue would not materially advance the termination of the litigation.

The Court noted that the Bankruptcy Court had held only that a presumption of abuse does not arise with regard to the Debtor's bankruptcy action. Thus, no matter how this Court ruled on the issue on appeal, it would not resolve the litigation. This Court determined that, if it upheld the Bankruptcy Court, the Bankruptcy Court must then consider whether "the totality of the circumstances" of the debtor's financial situation demonstrates abuse under 11 U.S.C. § 707(b)(3).

On the other hand, if the Court reversed the Bankruptcy Court's order, it would only mean that a presumption of abuse should apply to the Debtor's action. A reversal would not mean that the Debtors' action should be dismissed. The Debtors could still rebut the presumption by a showing of special circumstances under 11 U.S.C. § 707(b)(2)(B).

The Court determined that, because the Bankruptcy Court's order determined only

whether a presumption of abuse applied to the Debtors' action but did not did determine the ultimate issue of whether the Debtors' action should be dismissed because it is actually abusive, the Bankruptcy Court order did not materially affect the outcome of the case. Further, resolution of the issue on appeal would not terminate the litigation. The Trustee now moves the Court to reconsider its dismissal of this appeal for lack of jurisdiction.

## II.   JURISDICTION.

In his Motion for Rehearing, the Trustee argues that the Bankruptcy Court order is, in fact, a final order from which an immediate appeal can be taken as a matter of right. Upon reconsideration, the Court will grant the Trustee leave to appeal the Bankruptcy Court's denial of the Trustee's motion to dismiss. Having made this determination, the Court will not address at any great length the Trustee's argument that the Bankruptcy Court's order was a final order for purposes of appeal.

The Court does reject, however, the Trustee's argument that the denial of a § 707(b) motion is final because it is the "functional equivalent" of a judgment on the merits in a civil action. In bankruptcy court, as in a civil action, the denial of a motion to dismiss merely permits the action to continue.  It does not resolve the action.

The Court also rejects the Trustee's argument that, pursuant to *Dow Corning*, the denial of a 707(b) motion to dismiss is final because it resolves a "discrete dispute" within the larger bankruptcy case.  As the Eleventh Circuit recently explained on this issue, "'[i]ncreased flexibility' in applying the finality doctrine in bankruptcy does not render appealable an order which does not finally dispose of a claim or adversary proceeding." *In re: Donald J. Donovan*, 532 F.3d 1134, 1136 (11th Cir. July 2, 2008)(holding that denial of a 707(b) motion to dismiss for

abuse is not a final, appealable order). Every bankruptcy court order disposing of a motion can be said to resolve a "discrete dispute" within the bankruptcy case. However, each such order is not immediately appealable.

"[T]he separate dispute being assessed must have been finally resolved and leave nothing more for the bankruptcy court to do." *Id.* (quoting *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985)). By denying the Trustee's motion to dismiss, the Bankruptcy Court simply permitted the bankruptcy action to continue. "The court did not conclusively resolve the bankruptcy case as a whole, nor did the court resolve any adversary proceeding or claim." *Id.*

In contrast, in *In re Dow Corning Corp.*, at issue was the order of a district court sitting in bankruptcy holding that the court lacked subject matter jurisdiction over certain tort claims pending against nondebtor defendants. The district court's order finally disposed of those particular tort claims in the district court action and, thus, was final. 86 F.3d at 487-88.

Even though the Court does not find that the Bankruptcy Court's order is a final one for purposes of appeal, upon reconsideration, the Court will grant the Trustee leave to appeal the order under 28 U.S.C. §158(a)(3). Section158(a)(3) does not list any factors to guide the court in determining whether an interlocutory appeal is appropriate. This Court noted in its prior opinion that courts had applied the standards provided in 28 U.S.C. § 1292(b) which governs interlocutory appeals to federal courts of appeals from district court orders. *See In re Eggleston Works Loudspeaker Co.*, 253 B.R. 519, 521 (6th Cir. BAP 2000).

Section 1292(b) provides the following:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference

10

of opinion and that an immediate appeal from the order may materially advance
the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

In applying § 1292(b), the Sixth Circuit has required that four elements be met: (1) the
question involved must be one of "law"; (2) it must be controlling; (3) there must be substantial
ground for "difference of opinion" about it; and (4) an immediate appeal must materially advance
the ultimate termination of the litigation. *See WCI Steel, Inc. v. Wilmington Trust Co.*, 338 B.R.
1, 13 (N.D. Ohio 2005); *In re M.T.G., Inc.*, 298 B.R. 310, 315 (E.D.Mich.2003) (citing *Cardwell
v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir. 1974)).

The issue presented on this appeal is whether, under the means test, a debtor may deduct
Ownership Costs from his current monthly income for a car that he owns free and clear of any
debt.  As the Court noted in its prior opinion, there is clearly substantial ground for a difference
of opinion on this issue as demonstrated by the heavy litigation involving it and the split of
authority resolving it.  Further, this is purely a question of law.

However, in its prior Opinion, this Court denied the Trustee leave to appeal on the
grounds that the issue presented on appeal did not involve a "controlling" issue of law and
because an immediate appeal of the issue would not materially advance the ultimate termination
of the litigation.  On reconsideration, the Court finds that it can and should grant the Trustee
leave to appeal this matter.

The Court makes this finding for various reasons. First, when determining whether to
grant an interlocutory appeal from a bankruptcy order under Section 158(a)(3), the standards

provided by 1292(b) are merely instructive. Section 158(a)(3) does not contain any such restrictive language.  *See In re Taranto*, 365 B.R. 85, 87 (6th Cir. BAP 2007)("[w]hile we are not constrained by the standards set forth in 18 U.S.C. § 1292(b). . .they are instructive"); *First Grand Rapids Place Ltd. v. Bareham*, 1998 WL 34344109, at * 1, n.1 (W.D. Mich. 1998)("while strict adherence to the section 1292(b) procedures comports with sound policy, the language of section 158(a)(3) vests broader discretion in the district courts to permit interlocutory appeals"); *In re Hayes Bankruptcy*, 220 B.R. 57, 59 (N.D. Iowa 1998)("Nothing in the text of § 158(a)(3) indicates a limit to the district court's discretion. Perhaps more importantly, nothing in the statutory or constitutional relationship between district and bankruptcy courts reveals any reason why a district court must decline review when the strict requirements of § 1292(b) are not met.").

Second, even under the standards set forth in Section 1292(b), it appears that the Court need only find that immediate appeal of the issue *may* materially advance the termination of the litigation. *See In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002); 28 U.S.C. § 1292(b)(permitting interlocutory appeal where district court finds "that an immediate appeal from the order *may* materially advance the ultimate termination of the litigation").  *But see Vitols v. Citizens Banking Co.*, 984 F.2d 168, 170 (6th Cir. 1993) (petitioner under 1292(b) "*must* show....that an immediate appeal *would* materially advance the ultimate termination of the litigation")(emphasis added).

Here, resolution of the issue on appeal may materially advance the termination of this litigation because, if this Court should reverse the Bankruptcy Court, holding that a presumption of abuse should attach to the Debtors' petition, then the action may terminate with the

Bankruptcy Court's resolution of the "special circumstances" issue on remand.  If, on the other hand, this issue is not resolved on an interlocutory appeal, then the action cannot possibly terminate until the bankruptcy proceedings are complete.  In other words, the parties and the court would have to expend time and resources to complete the bankruptcy action before it could be determined on appeal if it should have been dismissed as abusive in the first place.

Third, "[a] legal issue is controlling if it could materially affect the outcome of the case." *WCI Steel, Inc.*, 338 B.R. at 14 (quoting *In re City of Memphis*, 293 F.3d at 351).  Here, while resolution of the issue on appeal only determines whether a presumption of abuse attaches to the Debtors' petition, that determination could materially affect the outcome of the case.  If there is no presumption, then the case must continue because the Trustee has not raised a "totality of the circumstances" argument.  If the presumption does attach, then the case could be dismissed after resolution of the Debtors' "special circumstances" argument.

Finally, the Court also finds instructive 28 U.S.C. § 158(d)(2)(A)(I)-(iii), which was enacted as part of BAPCA, and provides that the courts of appeals are granted jurisdiction over interlocutory orders in bankruptcy actions if: 1) the order involves a question of law as to which there is no controlling decision or involves a matter of public importance; 2) the order involves a question of law requiring resolution of conflicting decisions; *or* 3) an immediate appeal from the order *may* "materially advance the progress of the case or proceeding in which the appeal is taken."  (emphasis added).

In determining whether to grant the Trustee leave to appeal this matter, this Court has weighed the various factors set forth in Sections 1292(b) and 158(d)(2)(A)(i)-(iii).  Given that the

13

issue on appeal is purely a legal issue; that there is a great difference of opinion regarding it and no controlling law resolving it; that an immediate appeal may materially advance the termination of this litigation; and that the issue is one of public importance, the Court will grant the Trustee leave to appeal.

### III.    ANALYSIS.

### A.    The Statutory Language.

Turning now to the issue on appeal, when interpreting a statute, the court must begin with its language. *Duncan v.* Walker, 533 U.S. 167, 172 (2001). "When the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000)(citation and internal quotations omitted). However, in the "rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' ... the intention of the drafters, rather than the strict language, controls." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242-43 (1989)(citation and internal brackets and quotations omitted).

The Bankruptcy Court noted that courts reaching opposite conclusions on the issue on appeal have relied on the plain language of the statute.  2007 WL 1119632 at *3.

In *Kimbro*, the Sixth Circuit BAP determined that the plain language allows debtors to take the Ownership Costs deduction even where they own their vehicle outright.  The court pointed out that the statute provides that the debtor's monthly expenses *shall be* the debtor's "applicable monthly expense amounts specified under the National Standards and Local Standards" and that the statute does not state that the debtor must have a debt or lease payment to

14

deduct Ownership Costs.  389 B.R. at 522.

In *Kimbro*, the BAP also noted that Section 707(b)(2)(A)(ii)(I) explicitly states that "[n]otwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." *Id.* at 523. The BAP determined that "[t]his provision alone established beyond doubt that Congress intended to allow an ownership expense even when a debtor has no debt payment on a vehicle."  *Id.*

Courts disallowing the deduction where the debtor owns his vehicle note that the statute directs that the debtor shall deduct only his *applicable* monthly expense amounts specified under the National and Local standards.  These courts interpret *applicable* to mean that only those debtors for whom the various expense amounts specified under the National and Local Standards actually *apply* may deduct the expense. *See in re Canales*, 377 B.R. 658, 665-66 (Bankr. C.D. Cal. 2007); *In re Ross-Tousey*, 368 B.R. 762, 765 (E.D. Wis. 2007).  Thus, if the debtor has no debt or lease payment on his vehicle, he cannot take the Ownership Costs deduction because it is not *applicable*.

Courts permitting the deduction regardless of whether the debtor has a loan or lease determine that *applicable* means the amount applicable to the debtor based on the geographic area in which he resides or, in the case of Ownership Costs, the number of cars he owns.  *In re McIvor*, 2006 WL 3949172, at *4 (E.D. Mich. 2006)(finding that "the word 'applicable,' in the context of 707(b)(2)(A)(ii)(I) means the applicable Local Standards as it pertains to the area in which the debtor resides."); *In re Smith*, 2007 WL 1836874, at *8 (Bankr. N. D. Ohio, June 22, 2007) ( "If the debtor has only one car, the 'applicable' expense is the one found in the first column [of the Standard for Ownership Costs]," and if a debtor has a second vehicle, the amount

in the second column is also 'applicable.'")

**B.    The Incorporation of the Internal Revenue Manual.**

On the web page where the Local and National Standards are found, the IRS explains:

> If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating costs equals the allowable transportation expense. The taxpayers is allowed the amount actually spent, or the standard, whichever is less. If a taxpayer has a car but no car payment, only the operating costs portion of the transportation standard is used to figure the allowable transportation expense.

Courts that prohibit debtors from taking the deduction where they have no car payment rely on this application by the IRS. *See, e.g., In re Pampas*, 369 B.R. 290 (Bankr. M.D.La. 2007); *In re Slusher*, 359 B.R. 290 (Bankr. D. Nev. 2007); *In re Carlin*, 348 B.R. 795 (Bankr. D. Ore. 2006);  *In re Barraza*, 346 B.R. 724 (Bankr. N.D. Tex. 2006).  These courts reason that 707(b) specifically adopts the amounts set forth in the Local Standards and that, "in order to understand the  context of those amounts, it is entirely appropriate to rely upon supporting material issued by the IRS clarifying those amounts."  *In re Brown*, 376 B.R. 601, 607 (Bankr. S.D. Tex. 2007).

Courts arriving at the opposite conclusion look to the language of the statute and determine that 707(b) only incorporates the Local and National Standards,  not all of the detailed collection procedures contained in the IRM. *In re Smith*, 2007 WL 1836874, at * 9 (Bankr. N.D. Ohio, June 22, 2007); *In re Crews*, 2007 WL 626041, at *4.   These courts point out that 707(b) does not mention the IRM or the Financial Analysis Handbook.  *See, e.g., Kimbro*, 389 B.R. at 522, 524.

These courts also rely upon the legislative history of the statute, noting that Congress specifically declined to approve a version of 707(b) that did reference the Internal Revenue

Service financial analysis. *In re Fowler*, 349 B.R. 414, 419 (Bankr. D. Del. 2006). In *Kimbro*, the Sixth Circuit BAP noted that the prior version of BAPCPA, which was not enacted, defined "projected monthly net income" for the means test to require a calculation of expenses as follows:

> (A) the expense allowances under the applicable National Standards, Local Standards, and Other Necessary Expenses allowance (excluding payments for debts) for the debtor ... in the area in which the debtor resides as determined under the Internal Revenue Service financial analysis for expenses in effect as of the date of the order for relief.

*Id*. at 525-26 (quoting H.R. Rep. 105-540 (May 18, 1998), H.R. 3150, 105th Congress (1998)).

In *Smith*, the court determined that the omission of any reference to the IRS financial analysis in the version of BAPCPA that was eventually enacted "evidences Congress' intent that the Courts not be bound by the financial analysis contained in the IRM and lends credence to the Court's conclusion that it should look only to the amounts set forth in the Local Standards." *In re Smith*, 2007 WL 1836874, at *10.

Courts allowing the deduction regardless of whether there is an automobile debt or lease also point out that most bankruptcy courts – even those who do not allow the deduction without a debt or lease – agree that the Standards should not be applied in bankruptcy in exactly the same manner that the IRS applies them. On the Collection Financial Standards web page, the IRS makes clear that the Local Standards are "[m]aximum allowances for housing and utilities and transportation." The web page further instructs, "[i]n most cases, the taxpayer is allowed the amount actually spent, or the local standard whichever is less." In other words, the Local Standards are caps.

Most bankruptcy courts, on the other hand, including those holding that a debtor may not

deduct Ownership Costs for a car he owns outright, agree that the plain language of 707(b)
entitles a debtor to deduct the fixed amount specified in the Standards regardless of what his
actual expenses are. *See In re* Canales, 377 B.R. at 664; *In re Ross-Tousey*, 368 B.R. at 765; *In re
Fowler*, 349 B.R. at 418-19.  This is because the statute provides that the debtor's monthly
expense *shall be* the applicable amount specified in the Standards.  The statute does not limit the
deduction to the lesser of debtor's actual expense or the amount provided in the Standards.  *See
Kimbro*, 389 B.R. at 522-23.  Courts allowing debtors the deduction reason that, because the
means test treats the Local Standards as fixed allowances and not as caps, "the IRS guideline is
simply inapplicable."  *In re Smith*, 2007 WL 1836874, at * 9.

In *Ross-Tousey*, however, the court agreed that the means test treats the Local Standards
as fixed allowances and not as caps, but it still concluded that the debtor who owns his car
outright is not entitled to the Ownership Costs deduction. The court interpreted Congress's use of
the term "applicable" to mean that, if the expense applies – meaning the debtor owes a debt or
lease payment –  then the debtor may deduct the amount specified in the Standards, no matter
what his actual expense is.  The court determined that this interpretation, "gives meaning to the
distinction between 'applicable' and 'actual' without taking a further step to conclude that
'applicable' means 'nonexistent' or 'fictional.'" *In re Ross-Tousey*, 368 B.R. at 765.

In *Wieland v. Thomas*, 382 B.R. 793 (D.Kan. 2008), in contrast, the district court agreed
that the deduction should not be permitted where there is no debt or lease but held that the statute
incorporates the IRM in its entirety.  The court determined that, "in allowing the 'applicable ...
amounts specified under the ... Standards,' Congress has imported those tables as a whole, with
their contents' context and meaning – i.e., with the numbers representing caps, as applied by the

18

IRS – into the means test calculation." *Id*. at 797-98.  "Moreover, the reference to amounts specified 'under' the Standards indicates that one should use the numbers that result when the Standards are applied as they usually are, and not simply use the numbers appearing 'in' the Standards."  *Id*. at 798.       The district court further noted that "[t]he IRS does not promulgate caps for Other Necessary Expenses, but allows the actual expenses incurred for those categories; thus, the use of 'actual' in reference to those categories is consistent with adoption of the entire IRS collection approach."  *Id*.  "The use of 'actual' with respect to the Standards would not have been appropriate because a debtor is *not* allowed his actual transportation (or housing or food) expense if that expense exceeds the cap listed in the Standards." *Id*.

### C.    Policy.

Courts allowing a debtor to take the deduction even though he does not have a car or lease payment, have argued that this approach reflects the fact that "a car for which the debtor no longer makes payments may soon need to be replaced (so that the debtor will actually have ownership expenses), and it avoids arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those who finished making their car payments just before the filing."  *In re Fowler*, 349 B.R. at 419 (quoting Eugene R. Wedoff, Means Testing in the New § 707(b), 79 Am. Bankr. L. J. 231, 257-758 (2005)).

In *Brown*, however, the court rejected this argument, noting that the IRM expressly provides that debtors who own vehicles that are either six years old or have over 75,000 miles are permitted a deduction of an additional $200 per month in their vehicle operating expenses. *Brown*, 376 B.R.  at 608; *See also* IRM, § 5.8.5.5.2.

In *Zaporski*, the court determined another policy reason for allowing the deduction is that

doing so does not mean a debtor's case will not be dismissed.  It simply means there is no

presumption of abuse.  *Zaporski*, 366 B.R. at 768.  The United States Trustee can still request

dismissal under § 707(b)(3) either for bad faith or a totality of circumstances analysis pursuant to

which the court can take into consideration the debtor's actual income and expenses including

any car payments or lack thereof.  *Id*.

In *Kimbro*, the Sixth Circuit BAP permitted the deduction partly because the "clear

policies behind the means test were the uniform application of a bright-line test that eliminates

judicial discretion" and because "Congress determined that these policies were more important

than accuracy." 389 B.R. at 52 8.  The BAP found that use of the IRM in the bankruptcy means

test would undermine this policy because it contains various provisions that actually grant a

revenue officer "significant discretion"  to deviate from the standard amount if necessary for the

taxpayers to avoid economic hardship. *Id*. at 528-30.

The BAP found that the trustee was in error in arguing that the IRM necessarily prohibits

a vehicle ownership expense when there is no debt or lease payment. *Id*. at 530 - 31.  The court

recognized that certain IRM provisions provide that vehicle ownership expenses are not

"generally allowed" if the debtor has no debt, but the BAP found "the trustee's premise that the

IRM never allows a revenue officer to consider and allow such expenses in such circumstances is

plainly mistaken."  *Id*. at 530.

The BAP noted that a debtor would be permitted to deduct the Ownership Costs under the

IRM if necessary to provide for his basic living expenses.  The BAP determined that, given this

discretion, if the IRM were applied to the bankruptcy means test, it would not mean that the

vehicle ownership expense would necessarily be prohibited when the debtor has no debt on his

vehicle.  Instead, it would "simply return bankruptcy judges to determining this expense (and all others) on a case by case, discretionary basis, in direct contravention of Congress's stated goals in enacting the means test."  *Id*. at 53-31.

In contrast, in *Wieland,* the district court disallowed the deduction, noting that BAPCPA was "intended to ensure that debtors repay creditors the maximum they can afford." 382 B.R. at 796 (quoting H.R.Rep. No. 109-31(1), 2005 U.S.C.C.A.N. 88, 89).  The court determined, "[t]hat purpose is best achieved by applying the means test in such a manner that the debtor's actual financial circumstances – i.e., what the debtor can actually afford to repay creditors – are represented." *Id*. at 798.  The court further determined that this interpretation did not conflict with the other BAPCPA purpose of providing a more objective test for abusive bankruptcies, stating that "[i]t hardly requires a complex analysis for a debtor to refrain from taking a car ownership allowance if he makes no car payments." *Id*.

In *Kimbro*, the Sixth Circuit BAP found that another policy reason for permitting the deduction for a debtor who owns a car free and clear of any debt was the fact that such a debtor still incurs expenses arising from the ownership of the vehicle.  *Id*. at 522. In fact, the BAP found that debt payments and lease payments are not really "ownership expenses."  *Id*. at 531.  Instead, "the expenses related to vehicle ownership are the expenses for depreciation, insurance, licensing fees and taxes." *Id*.  The BAP determined that "every vehicle owner incurs ownership expenses, and that is so regardless of debt or lease payments."  *Id*.  The court concluded that "[b]ecause the ownership of a vehicle always involves an expense, it was neither absurd nor irrational for Congress to allow a uniform deduction in the bankruptcy means test for an ownership expense even when there is no debt or lease payment."  *Id*.

21

Courts disallowing the deduction, however,  have pointed out that, if all a debtor needs to claim the Ownership Costs deduction is "ownership," then he could claim it on "an old, rusted pile of scrap metal sitting on cinder blocks in his backyard."  *Brown*, 376 B.R. at 607.

## IV.    CONCLUSION.

Having considered the various positions on this issue, the Court concludes that a debtor is permitted to deduct from his current monthly income "Ownership Costs" under the bankruptcy means test even where he owns his car free and clear of any debt.  In making this determination, the Court relies most heavily on and follows the well-reasoned decision by the Sixth Circuit BAP in *Kimbro*.

The issue is whether Section 707(b)(2)(A)(ii)(I) directs that bankruptcy courts deduct the expense amounts specified under the Local and National Standards in the same manner as the IRS does under the IRM including the Financial Analysis Handbook.  There is nothing in the language of the statute that explicitly provides for this. Further, there is nothing in the language of the statute that explicitly provides that a debtor must have a debt or lease payment in order to take the Ownership Costs deduction.

Instead, Section 707(b)(2)(A)(ii)(I) directs that bankruptcy courts should not apply the deductions in the same manner as the IRS does. Again, the IRS applies the Local Standards as caps, permitting taxpayers to deduct the lesser of their actual expenses or the standard.  The statute does not state that the Local Standards should be treated as caps. Nor does it limit debtors to their *actual* costs, as the statute does with regard to Other Necessary Expenses.  Instead Section 707(b)(2)(A)(ii)(I) provides that the debtor's monthly expenses "shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local

22

Standards. . . ."   Thus, the deduction is the amount specified under the Standards, no matter what the debtor's actual expenses are.

Further, the Financial Analysis Handbook provides that Ownership Costs are "nationwide figures for loan or lease payments." Financial Analysis Handbook, § 5.15.1.7.  Section 707(b)(2)(A)(ii)(I), however, directs that "the monthly expenses of the debtor shall not include any payments for debts."

Given that Congress did not intend for the debtor's "applicable monthly expense amounts specified under the . . . Local Standards" to include an automobile loan payment, the term "applicable" cannot be interpreted to mean that the debtor must have an automobile loan payment to take the deduction.  Instead, the only logical interpretation of the term "applicable" is that it refers to the amount "applicable" to the debtor from among the various expense amounts provided in the tables that make up the Standards.

The Court also notes that the statute directs that "Other Necessary Expenses" be deducted in a different manner in bankruptcy than they are deducted by the IRS.   Under the IRS Financial Analysis Handbook, taxpayers are permitted to deduct any "other expenses" provided "they meet the necessary expense test – they must provide for the health and welfare of the taxpayer and/or his or her family or they must be for the production of income."  IRS Financial Analysis Handbook, § 5.15.1.10 at ¶ 1.  The Financial Analysis Handbook also lists 15 categories of expenses and explains when these expenses should be deemed necessary. IRS Financial Analysis Handbook, § 5.15.1.10 at ¶ 3.  However, the deduction is not limited to these categories.  Section 707(b)(2)(A)(ii)(I), in contrast, directs that debtors can only deduct those expenses "*for the categories specified* as Other Necessary Expenses issued by the Internal Revenue Service. . . ."

23

*See In re Saffrin*, 380 B.R. 191, 193 (Bankr. N.D. Ill. 2007).

Finally, the Court notes that permitting the debtor to take the deduction even where he has no car or lease payment is only relevant to whether a "presumption" of abuse attaches to the debtor's petition. It is more reasonable that Congress intended to impose a bright-line test to make this threshold determination rather than invoking the provisions of the IRM and the Financial Analysis Handbook.

This is especially so given that, even if there is no presumption of abuse, trustees can still raise a bad faith or totality of the circumstances argument in support of their motion to dismiss. It is here where the bankruptcy court can flesh out such issues as whether the debtor actually has any debt or lease payment on the vehicle; whether the debtor only owes a couple more payments on the vehicle; what the debtor's repair expenses are on the vehicle; and whether the debtor is claiming a deduction for a "rusted pile of scrap metal." The "bad faith" and "totality of the circumstances" provisions adequately ensure that debtors repay creditors the maximum they can afford as Congress intended with BAPCPA.

For all these reasons, the Court hereby ORDERS as follows:

1)      the Trustee's Motion for a Rehearing (Rec. No. 10) is GRANTED;

2)      the Bankruptcy Court opinion is AFFIRMED; and

3)      and this matter is REMANDED to the Bankruptcy Court.

Dated this 29th day of September, 2008.



**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**